UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEVELL DOUGHTY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-1279** |
| **STATE OF LOUISIANA** | **SECTION "R"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.     Factual Background**

The petitioner, Levell Doughty ("Doughty"), is a convicted inmate incarcerated in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.[2] On June 25, 2004, Doughty was charged by

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

bill of information in Orleans Parish with manslaughter by the killing of Carl Jackson.[3] He entered a plea of not guilty to the charge on June 29, 2004.[4]

The record reflects that, on the evening of April 25, 2004, Carl Jackson was stabbed to death in an apartment at 1226 South Galvez Street in New Orleans.[5] An autopsy revealed that Jackson had two deep stab wounds, one to his chest that perforated his pericardial sac and aorta, and one to his back. He also sustained three superficial knife wounds, one to his right shoulder, one to the back left side of his neck, and one to the back of his head.

A forensic pathologist testified that the wound to his chest was the fatal wound. He also testified that an analysis of Jackson's bodily fluids was negative for alcohol and positive for cocaine. He estimated that the victim had ingested the cocaine within 24 hours of his death. He testified that he did not find any defensive wounds. The pathologist stated that the back wound was most likely inflicted from behind, but he admitted that it was possible for the wound to have been inflicted from the front if Jackson had been bent over as he approached his attacker.

Edward Williams, who admitted that he had a prior conviction in 1985 for attempted simple robbery, testified that he lived in an upstairs apartment. He stated that Doughty's sister, Isabel Gaines, lived in an apartment downstairs, and Jackson, her boyfriend, lived with her. Williams testified that on the night of the stabbing, he was awakened by a gunshot outside, and then his fiancee came into the bedroom and told him that someone was fighting downstairs. Williams testified that he could hear Doughty's voice and the sounds of a struggle coming from the downstairs

---

[3]St. Rec. Vol. 1 of 3, Bill of Information, 6/25/04.

[4]St. Rec. Vol. 1 of 3, Minute Entry, 6/29/04.

[5]The facts were taken from the unpublished opinion of the Louisiana Fourth Circuit Court of Appeal after Doughty's out-of-time appeal. *State v. Doughty*, 970 So.2d 1275 (La. App. 4th Cir. 2007) (Table); St. Rec. Vol. 2 of 3, 4th Cir. Opinion, 2007-KA-0445, pp. 2-5, 12/19/07.

apartment. Williams testified that he hesitated for a time, and then he started to go downstairs to investigate. As he started down the stairs, he met Jackson on the stairwell. Jackson told him that he had been stabbed, and he asked Williams to call 911. Williams stated that Jackson then collapsed on the stairs. Williams also testified that he did not see Doughty on the scene that night.

On cross-examination, Williams testified that he did not see any of the events that occurred in the downstairs apartment. He testified that Jackson had begun living with Doughty's sister after he was released from prison, and that Doughty sometimes also stayed at the apartment. He stated that Doughty's sister was not at the apartment on the night of the stabbing.

Officer Damion Ranson testified that he and his partner were the responding officers to the call of a stabbing. He testified that the door to the apartment was open, and they saw a blood trail leading from the kitchen up the stairs. They followed the trail and found Jackson lying in the stairwell. Officer Ranson testified that although they could not feel a pulse on the victim, they called for EMS personnel and for their ranking officer. He testified that they entered the downstairs apartment through the kitchen door, and there was blood on the kitchen floor. Officer Ranson did not recall if there was a pot of grease anywhere in the kitchen or any bloody knives. He stated that they found no knives near Jackson's body.

Detective James Kelly testified that he arrived on the scene later and directed the crime lab personnel to take photographs. He testified that because it appeared that Jackson had died of stab wounds, his officers looked around the apartment and the surrounding area for a bloody knife, but they did not find one. Detective Kelly also testified that he did not notice a pot of grease in the kitchen. He indicated, however, that because he did not speak with Doughty until two days later, he did not know to look for one. He also stated that he did not see any grease spilled on the floor.

Detective Kelly also testified that two days after the stabbing, Doughty surrendered to the police and gave a statement after being advised of and waiving his rights. The State played the statement to the jury. Detective Kelly testified that Doughty did not complain of any injuries, burns, or knife wounds when they talked two days after the stabbing. He admitted that Doughty insisted in his statement that Jackson had lunged at him.

On cross-examination, Detective Kelly admitted that there were pots on the stove, but he did not remember if any contained grease. He stated that there were knives in the apartment, but none were bloody. When shown a photograph taken on the night of the stabbing, Detective Kelly recognized a blue discoloration on the kitchen floor in front of a jug, but he could not tell if that discoloration was liquid. He further testified that none of the photographs taken at the scene showed the entire stove top. He also did not remember seeing any garden tools in the apartment. He denied suggesting to Doughty that he present a claim of self-defense just to get him to make a statement.

In Doughty's recorded statement, he told police that he lived at the apartment with his sister and Jackson. He stated that he had lived there a few years, while Jackson had recently moved in after being released from prison. Doughty stated that, on the night in question, he knocked on the door, and Jackson initially refused to let him inside. He knocked again, and Jackson let him in, but immediately began arguing with him. He told police that Jackson accused him of being involved in trouble in the area.

Doughty told police that Jackson was cooking meatballs on the stove at that time. As the argument escalated, Jackson grabbed a knife in one hand and the pan with the meatballs and grease in the other. Doughty stated that Jackson threatened to throw the grease on him if he did not "get out of my face." Doughty stated that Jackson made a motion as if he was going to throw the grease

4

on him, and in response Doughty grabbed a knife that was sitting on the side of the stove. Doughty stated that he "blanked out," but he remembered Jackson coming at him at some point with a garden hoe. Doughty further stated that he swung his knife at Jackson while Jackson was swinging at him. Doughty could not remember how many times he cut the victim, although he remembered seeing blood on the victim's head. He surmised that the wound to Jackson's back was made at the stove when Jackson swung at him with the pan of grease. Doughty stated that he continued to swing the knife at Jackson as he tried to get out the door. He insisted that Jackson at that point grabbed a garden hoe and kept swinging at him as he tried to leave.

Doughty further stated that he then left the apartment and must have dropped the knife after leaving the apartment. He told police that as he was leaving, he heard Jackson yelling for someone to call the police. Doughty insisted that he only stabbed Jackson in self-defense. He also insisted that he did not intend to kill Jackson or to harm anyone. The defense did not call any witnesses at trial.

Doughty was tried before a jury on June 2, 2005, and he was found guilty as charged.[6] The state trial court sentenced Doughty to serve 20 years in prison at hard labor.[7] The State filed a multiple offender bill against Doughty that same day.[8] Because of delays caused by Hurricane Katrina, no action was ever taken on that multiple bill.[9]

---

[6] St. Rec. Vol. 1 of 3, Trial Minutes, 6/2/05; Verdict Form, 6/2/05; St. Rec. Vol. 2 of 3, Trial Transcript, 6/2/05.

[7] St. Rec. Vol. 1 of 3, Sentencing Minutes, 7/1/05; St. Rec. Vol. 2 of 3, Sentencing Transcript, 7/1/05.

[8] *Id*.; Multiple Bill, 7/5/05.

[9] St. Rec. Vol. 2 of 3, 4th Cir. Opinion, 2007-KA-0445, p. 1, 12/19/07.

On February 5, 2007, Doughty submitted an application for writ of mandamus to the Louisiana Fourth Circuit.[10] He argued that, on September 18, 2006, he submitted an application for post-conviction relief to the state trial court, in which he asked for an out-of-time appeal, and he had not received a ruling thereon. The Louisiana Fourth Circuit granted the application for the sole purpose of transferring it to the trial court for consideration.[11] On March 5, 2007, the state trial court granted the application in as much as it sought the out-of-time appeal and appointment of counsel.[12]

On appeal, Doughty's appointed counsel argued that his right to a meaningful appeal required reversal, because the recording of his inculpatory statement could not be located.[13] After the tape was apparently located and produced, counsel filed a supplemental brief in which he deemed the first brief to be moot and instead argued that the State failed to prove beyond a reasonable doubt that Doughty did not act in self-defense.

On December 19, 2007, the Louisiana Fourth Circuit affirmed the conviction and sentence.[14] The Court resolved that the evidence was sufficient to support the manslaughter verdict and that the testimony and physical evidence was sufficient to negate Doughty's statements of self-defense.

On September 19, 2008, the Louisiana Supreme Court denied without stated reasons Doughty's writ application seeking review of the appeal.[15] His conviction became final 90 days

---

[10]St. Rec. Vol. 3 of 3, 4th Cir. Writ Application, 2007-K-0184, 2/9/07 (dated 2/5/07).

[11]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2007-K-0184, 2/28/07.

[12]St. Rec. Vol. 1 of 3, Trial Court Order, 3/5/07; Minute Entry, 4/10/07.

[13]St. Rec. Vol. 2 of 3, Appeal Brief, 2007-KA-0445, 5/7/07.

[14]St. Rec. Vol. 2 of 3, 4th Cir. Opinion, 2007-KA-0445, 12/19/07.

[15]*State v. Doughty*, 992 So.2d 949 (La. 2008); St. Rec. Vol. 2 of 3, La. S. Ct. Order, 2008-KO-0245, 9/19/08; La. S. Ct. Letter, 2008-KO-245, 2/1/08 (showing postal meter 1/15/08).

later, on December 18, 2008, when he did not file a writ of certiorari with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1); *see also*, *Jiminez v. Quarterman*, 555 U.S. 113, 121 (2009) (where a state court grants a criminal defendant the right to file an out-of-time appeal during state collateral review, his judgment is not yet final for purposes of seeking federal habeas review).

On July 20, 2009, Doughty submitted an application for post-conviction relief in which he raised two grounds for relief:[16] (1) ineffective assistance of counsel because counsel failed to visit him, failed to respond to his request to interview or subpoena witnesses, and moved to remove negligent homicide as a responsive verdict; and (2) the Trial Court erred under La. Code Crim. P. art. 814(c) by accepting the waiver of negligent homicide as a responsive verdict. The record also contains a motion filed by Doughty on August 14, 2009, to amend his application to include argument that he did not receive notice prior to trial of the State's intent to use his inculpatory statement.[17]

On December 11, 2009, the Trial Court denied relief finding that adjudication was affirmed on appeal and that the claims otherwise lacked merit.[18] The record does not contain a ruling on Doughty's August 14, 2009 motion by the Trial Court.[19]

In the meantime, on October 19, 2009, Doughty submitted an application for writ of mandamus to the Louisiana Fourth Circuit complaining that the Trial Court had not ruled on his

---

[16]St. Rec. Vol. 1 of 3, Uniform Application for Post-Conviction Relief, 7/24/09 (dated 7/20/09).

[17]St. Rec. Vol. 1 of 3, Motion to Amend, 8/14/09 (dated 8/8/09).

[18]St. Rec. Vol. 3 of 6, Trial Court Judgment, 12/11/09.

[19]St. Rec. Vol. 3 of 6, Motion for Clarification, 12/29/09 (dated 12/27/09); Trial Court Order, 1/12/10.

application for post-conviction relief as amended. On December 2, 2009, the Louisiana Fourth Circuit denied the application stating the following:[20]

> After reviewing the claims raised by relator in his application for post-conviction relief and motion to amend, this court finds he has not shown that he is entitled to relief. Therefore, his request for a writ of mandamus is denied.

On December 3, 2009, the Trial Court issued its own ruling on the application for post-conviction relief finding it to be untimely filed under La. Code Crim. P. art. 930.8, and alternatively commenting that the ineffective assistance of counsel claim was without merit.[21]

Doughty sought review of that ruling in Louisiana Fourth Circuit.[22] On February 24, 2010, the Court denied the application finding it repetitive of the application addressed in the prior writ application, No. 2009-K-1511. The Court deemed the claims repetitive and also found no error in the Trial Court's judgment, citing La. Code Crim. P. art. 930.4(D).[23]

On March 20, 2010, Doughty submitted a writ application to the Louisiana Supreme Court raising three issues for review:[24] (1) the Louisiana Fourth Circuit erred in denying relief on the post-conviction claims in No. 2009-K-1511, because the application was only submitted as an exhibit to prove the need for mandamus; (2) the Trial Court erred in denying his post-conviction application as untimely under La. Code Crim. P. art. 930.8; and (3) counsel gave ineffective assistance, because he failed to interview and call Isabel Gaines (his sister) as a witness, failed to interview police about

---

[20]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2009-K-1511, 12/2/09.

[21]St. Rec. Vol. 1 of 3, Trial Court Order, 12/3/09; Minute Entry, 12/3/09.

[22]St. Rec. Vol. 3 of 3, 4th Cir. Writ Application, 2010-K-0055, 1/13/10.

[23]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2010-K-0055, 2/24/10.

[24]The State did not produce a copy of this writ application because it was provided to the Court by Doughty. Rec. Doc. No. 1, p. 64-66.

Gaines's comments to them, failed to move for speedy trial, failed to speak with the only witness in the home who died before trial, and failed to visit the scene of the crime as part of his investigation.[25] The Court denied Doughty's writ application on March 25, 2011, without stated reasons.[26]

## II.  Federal Petition

On May 31, 2011, the clerk of this Court filed Doughty's petition for federal habeas corpus relief in which he raises ineffective assistance of counsel.[27] Doughty does not delineate any specific errors or theories to support the ineffective assistance of counsel claim. He only contends that the claim should not have been time barred by the state trial court, because of his out-of-time appeal and his subsequent, timely pursuit of post-conviction relief.

In its response, the State concedes the timeliness of the filing of Doughty's federal petition. The State recognizes that Doughty failed to provide specific instances of ineffective assistance to support his sole claim before this Court. Out of an abundance of caution, however, the State considered the specific theories of error urged in each of the state courts. Having done so, the State argues that Doughty's petition presents several unexhausted claims, which the State assumes would be in procedural default in the state courts by this time, and one exhausted ground (failure to interview Gaines) which is meritless.

---

[25]St. Rec. Vol. 1 of 6, La. S. Ct. Writ Application, 10-KH-1246, 6/2/10 (dated 5/24/10); St. Rec. Vol. 3 of 6, La. S. Ct. Letter, 2010-KH-1246, 6/2/10 (showing postmark of 5/26/10).

[26]*State ex rel. Doughty v. State*, 61 So.3d 658 (La. 2011); Rec. Doc. No. 1, p. 67.

[27]Rec. Doc. No. 1-2.

## III.     General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[28] applies to this petition, which is deemed filed in this court under the federal mailbox rule on April 13, 2011.[29] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State first argues that Doughty has failed to present a cognizable claim because he has not presented specific theories or instances to support his broad claim of ineffective assistance of counsel. There is no doubt that this is true.

Under a broad reading of his pleadings, however, the State has considered the various theories of ineffective assistance raised in the state courts as if they were raised in this federal petition. In doing so, the State argues that all but one theory are not properly exhausted. Although the State suggests that the claims may also be in procedural default, the State fails to adequately

---

[28] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[29] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Doughty's federal habeas petition on May 31, 2011, when the filing fee was paid. Doughty dated his signature on the petition on April 13, 2011. This is presumed to be the earliest date on which he could have been submitted the pleadings to prison officials for mailing. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

argue that position. Nevertheless, it is clear from the record that if Doughty intended to raise those theories in support of his ineffective assistance of counsel claim, his petition would be a mixed petition, presenting both unexhausted and exhausted grounds for relief.

Affording Doughty every benefit and the broadest reading of his *pro se* petition, the Court will address the petition as if Doughty had reiterated the theories of ineffective assistance presented in the state courts. In doing so, the Court finds that his mixed petition should be dismissed.

## IV.     <u>Failure to Exhaust</u>

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new

11

factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in a state court if it was not specifically raised at each level of the state courts. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("the prisoner must 'fairly present' his claim in each appropriate state court"). Furthermore, a prisoner does not fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id.*, at 32.

In this case, the record shows that Doughty first raised ineffective assistance of counsel to the state trial court on post-conviction review. Specifically, he alleged that counsel gave ineffective assistance in the following ways: (1) counsel failed to visit him; (2) counsel failed to respond to his request to interview or subpoena witnesses; and (3) counsel moved to remove negligent homicide as a responsive verdict. The Trial Court denied relief as untimely filed under La. Code Crim. P. art. 930.8. These same arguments were raised to and considered by the Louisiana Fourth Circuit in Doughty's writ of mandamus, No. 2009-K-1511, which was denied for lack of entitlement to relief, and in the last writ application, No. 2010-K-0055, which was denied as repetitive under La. Code Crim. P. art. 930.4(D).

Doughty proceeded to the Louisiana Supreme Court for further review and presented the following grounds of ineffective assistance of counsel: (1) counsel failed to interview and call his sister, Isabel Gaines, as a witness; (2) counsel failed to interview police about Gaines's statements to them; (3) counsel failed to move for speedy trial; (4) counsel failed to speak with the only witness

in the home at the time and the witness died before trial; and (5) counsel failed to visit the scene of the crime as part of his investigation.

Of these five claims, only the first issue, regarding the investigation and calling of witnesses, arguably was raised with the lower courts before being brought to the Louisiana Supreme Court. Doughty had not before identified his sister as a witness to be called or questioned by counsel. Nevertheless, he at least argued to the lower courts that he had provided a witness's name and that counsel had not pursued the witness for trial. The claim appears to have been exhausted.

The other four theories, numbered two through five in the foregoing paragraph, were not presented to the trial or appellate court in any fashion. A petitioner does not exhaust state remedies when he fails to present claims to the lower courts before submitting them to the state's highest court, here the Louisiana Supreme Court. *See Baldwin*, 541 U.S. at 29. Considering these five theories in support of the ineffective assistance of counsel claim raised in this federal petition, Doughty has presented this Court with both exhausted and unexhausted arguments.

The record discloses no good cause for Doughty's failure to properly and fully exhaust his claims and arguments in the state courts, and the Court can find none from its review of the record. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). Therefore, Doughty's mixed petition, presenting both exhausted and unexhausted claims, should be dismissed without prejudice to allow him an opportunity to pursue complete exhaustion, unless he chooses to dismiss all of the unexhausted arguments and claims presented to this Court and proceed only with those properly presented here. *Pliler v. Ford*, 542 U.S. 225, 233 (2004) (quoting *Rose*, 455 U.S. at 510); *Whitehead*, 157 F.3d at 387.

## V. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Levell Doughty's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[30]

New Orleans, Louisiana, this 14th day of December, 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[30] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.