UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEVELL DOUGHTY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-1279** |
| **STATE OF LOUISIANA** | **SECTION: "R"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I. Factual and Procedural Background

The petitioner, Levell Doughty ("Doughty"), is a convicted inmate incarcerated in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.[2] On June 25, 2004, Doughty was charged by bill of information in Orleans Parish with manslaughter by the killing of Carl Jackson.[3] He entered

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

[3] St. Rec. Vol. 1 of 3, Bill of Information, 6/25/04.

a plea of not guilty to the charge on June 29, 2004.[4]

The record reflects that, on the evening of April 25, 2004, Carl Jackson ("Jackson") was stabbed to death in an apartment at 1226 South Galvez Street in New Orleans.[5] An autopsy revealed that Jackson had two deep stab wounds, one to his chest that perforated his pericardial sac and aorta, and one to his back. He also sustained three superficial knife wounds, one to his right shoulder, one to the back left side of his neck, and one to the back of his head.

A forensic pathologist testified that the wound to his chest was the fatal wound. He also testified that an analysis of Jackson's bodily fluids was negative for alcohol and positive for cocaine. He estimated that the victim had ingested the cocaine within 24 hours of his death. He testified that he did not find any defensive wounds. The pathologist stated that the back wound was most likely inflicted from behind, but he admitted that it was possible for the wound to have been inflicted from the front if Jackson had been bent over as he approached his attacker.

Edward Williams, who admitted that he had a prior conviction in 1985 for attempted simple robbery, testified that he lived in an upstairs apartment. He stated that Doughty's sister, Isabel Gaines ("Gaines"), lived in an apartment downstairs, and Jackson, her boyfriend, lived with her. Williams testified that on the night of the stabbing, he was awakened by a gunshot outside, and then his fiancee came into the bedroom and told him that someone was fighting downstairs. Williams testified that he could hear Doughty's voice and the sounds of a struggle coming from the downstairs apartment. Williams testified that he hesitated for a time, and then he started to go downstairs to

---

[4]St. Rec. Vol. 1 of 3, Minute Entry, 6/29/04.

[5]The facts were taken from the unpublished opinion of the Louisiana Fourth Circuit Court of Appeal after Doughty's out-of-time appeal. *State v. Doughty*, 970 So.2d 1275 (La. App. 4th Cir. 2007) (Table); St. Rec. Vol. 2 of 3, 4th Cir. Opinion, 2007-KA-0445, pp. 2-5, 12/19/07.

investigate. As he started down the stairs, he met Jackson on the stairwell. Jackson told him that he had been stabbed, and he asked Williams to call 911. Williams stated that Jackson then collapsed on the stairs. Williams also testified that he did not see Doughty on the scene that night.

On cross-examination, Williams testified that he did not see any of the events that occurred in the downstairs apartment. He testified that Jackson had begun living with Doughty's sister after he was released from prison, and that Doughty sometimes also stayed at the apartment. He stated that Doughty's sister was not at the apartment on the night of the stabbing.

Officer Damion Ranson testified that he and his partner were the responding officers to the call of a stabbing. He testified that the door to the apartment was open, and they saw a blood trail leading from the kitchen up the stairs. They followed the trail and found Jackson lying in the stairwell. Officer Ranson testified that although they could not feel a pulse on the victim, they called for EMS personnel and for their ranking officer. He testified that they entered the downstairs apartment through the kitchen door, and there was blood on the kitchen floor. Officer Ranson did not recall if there was a pot of grease anywhere in the kitchen or any bloody knives. He stated that they found no knives near Jackson's body.

Detective James Kelly testified that he arrived on the scene later and directed the crime lab personnel to take photographs. He testified that because it appeared that Jackson had died of stab wounds, his officers looked around the apartment and the surrounding area for a bloody knife, but they did not find one. Detective Kelly also testified that he did not notice a pot of grease in the kitchen. He indicated, however, that because he did not speak with Doughty until two days later, he did not know to look for one. He also stated that he did not see any grease spilled on the floor.

Detective Kelly also testified that two days after the stabbing, Doughty surrendered to the

police and gave a statement after being advised of and waiving his rights.  The State played the statement to the jury.  Detective Kelly testified that Doughty did not complain of any injuries, burns, or knife wounds when they talked two days after the stabbing.  He admitted that Doughty insisted in his statement that Jackson had lunged at him.

On cross-examination, Detective Kelly admitted that there were pots on the stove, but he did not remember if any contained grease.  He stated that there were knives in the apartment, but none were bloody.  When shown a photograph taken on the night of the stabbing, Detective Kelly recognized a blue discoloration on the kitchen floor in front of a jug, but he could not tell if that discoloration was liquid.  He further testified that none of the photographs taken at the scene showed the entire stove top.  He also did not remember seeing any garden tools in the apartment.  He denied suggesting to Doughty that he present a claim of self-defense just to get him to make a statement.

In Doughty's recorded statement, he told police that he lived at the apartment with his sister and Jackson.  He stated that he had lived there a few years, while Jackson had recently moved in after being released from prison.  Doughty stated that, on the night in question, he knocked on the door, and Jackson initially refused to let him inside.  He knocked again, and Jackson let him in, but immediately began arguing with him.  He told police that Jackson accused him of being involved in trouble in the area.

Doughty told police that Jackson was cooking meatballs on the stove at that time.  As the argument escalated, Jackson grabbed a knife in one hand and the pan with the meatballs and grease in the other.  Doughty stated that Jackson threatened to throw the grease on him if he did not "get out of my face."  Doughty stated that Jackson made a motion as if he was going to throw the grease on him, and in response Doughty grabbed a knife that was sitting on the side of the stove.  Doughty

4

stated that he "blanked out," but he remembered Jackson coming at him at some point with a garden hoe. Doughty further stated that he swung his knife at Jackson while Jackson was swinging at him. Doughty could not remember how many times he cut the victim, although he remembered seeing blood on the victim's head. He surmised that the wound to Jackson's back was made at the stove when Jackson swung at him with the pan of grease. Doughty stated that he continued to swing the knife at Jackson as he tried to get out the door. He insisted that Jackson at that point grabbed a garden hoe and kept swinging at him as he tried to leave.

Doughty further stated that he then left the apartment and must have dropped the knife after leaving the apartment. He told police that as he was leaving, he heard Jackson yelling for someone to call the police. Doughty insisted that he only stabbed Jackson in self-defense. He also insisted that he did not intend to kill Jackson or to harm anyone. The defense did not call any witnesses at trial.

Doughty was tried before a jury on June 2, 2005, and he was found guilty as charged.[6] The state trial court sentenced Doughty to serve 20 years in prison at hard labor.[7] The State filed a multiple offender bill against Doughty that same day.[8] Because of delays caused by Hurricane Katrina, no action was ever taken on that multiple bill.[9]

On February 5, 2007, Doughty submitted an application for writ of mandamus to the Louisiana Fourth Circuit.[10] He argued that, on September 18, 2006, he submitted an application for

---

[6]St. Rec. Vol. 1 of 3, Trial Minutes, 6/2/05; Verdict Form, 6/2/05; St. Rec. Vol. 2 of 3, Trial Transcript, 6/2/05.

[7]St. Rec. Vol. 1 of 3, Sentencing Minutes, 7/1/05; St. Rec. Vol. 2 of 3, Sentencing Transcript, 7/1/05.

[8]*Id.*; Multiple Bill, 7/1/05.

[9]St. Rec. Vol. 2 of 3, 4th Cir. Opinion, 2007-KA-0445, p. 1, 12/19/07.

[10]St. Rec. Vol. 3 of 3, 4th Cir. Writ Application, 2007-K-0184, 2/9/07 (dated 2/5/07).

5

post-conviction relief to the state trial court, in which he asked for an out-of-time appeal, and he had not received a ruling thereon. The Louisiana Fourth Circuit granted the application for the sole purpose of transferring it to the trial court for consideration.[11] On March 5, 2007, the state trial court granted the application in as much as it sought the out-of-time appeal and appointment of counsel.[12]

On appeal, Doughty's appointed counsel argued that his right to a meaningful appeal required reversal, because the recording of his inculpatory statement could not be located.[13] After the tape was apparently located and produced, counsel filed a supplemental brief in which he deemed the first brief to be moot and instead argued that the State failed to prove beyond a reasonable doubt that Doughty did not act in self-defense.

On December 19, 2007, the Louisiana Fourth Circuit affirmed the conviction and sentence.[14] The Court resolved that the evidence was sufficient to support the manslaughter verdict and that the testimony and physical evidence was sufficient to negate Doughty's statements of self-defense.

On September 19, 2008, the Louisiana Supreme Court denied without stated reasons Doughty's writ application seeking review of the appeal.[15] His conviction became final 90 days later, on December 18, 2008, when he did not file a writ of certiorari with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. §

---

[11]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2007-K-0184, 2/28/07.

[12]St. Rec. Vol. 1 of 3, Trial Court Order, 3/5/07; Minute Entry, 4/10/07.

[13]St. Rec. Vol. 2 of 3, Appeal Brief, 2007-KA-0445, 5/7/07.

[14]St. Rec. Vol. 2 of 3, 4th Cir. Opinion, 2007-KA-0445, 12/19/07.

[15]*State v. Doughty*, 992 So.2d 949 (La. 2008); St. Rec. Vol. 2 of 3, La. S. Ct. Order, 2008-KO-0245, 9/19/08; La. S. Ct. Letter, 2008-KO-245, 2/1/08 (showing postal meter 1/15/08).

2244(d)(1)(A)); U.S. S. Ct. Rule 13(1); *see also*, *Jiminez v. Quarterman*, 555 U.S. 113, 121 (2009) (where a state court grants a criminal defendant the right to file an out-of-time appeal during state collateral review, his judgment is not yet final for purposes of seeking federal habeas review).

On July 20, 2009, Doughty submitted an application for post-conviction relief in which he raised two grounds for relief:[16] (1) ineffective assistance of counsel because counsel failed to visit him, failed to respond to his request to interview or subpoena witnesses, and moved to remove negligent homicide as a responsive verdict; and (2) the Trial Court erred under La. Code Crim. P. art. 814(c) by accepting the waiver of negligent homicide as a responsive verdict. The record also contains a motion filed by Doughty on August 14, 2009, to amend his application to include argument that he did not receive notice prior to trial of the State's intent to use his inculpatory statement.[17]

On December 11, 2009, the Trial Court denied relief finding that adjudication was affirmed on appeal and that the claims otherwise lacked merit.[18] The record does not contain a ruling on Doughty's August 14, 2009 motion by the Trial Court.[19]

In the meantime, on October 19, 2009, Doughty submitted an application for writ of mandamus to the Louisiana Fourth Circuit complaining that the Trial Court had not ruled on his application for post-conviction relief as amended. On December 2, 2009, the Louisiana Fourth Circuit denied the application stating the following:[20]

---

[16]St. Rec. Vol. 1 of 3, Uniform Application for Post-Conviction Relief, 7/24/09 (dated 7/20/09).

[17]St. Rec. Vol. 1 of 3, Motion to Amend, 8/14/09 (dated 8/8/09).

[18]St. Rec. Vol. 3 of 6, Trial Court Judgment, 12/11/09.

[19]St. Rec. Vol. 3 of 6, Motion for Clarification, 12/29/09 (dated 12/27/09); Trial Court Order, 1/12/10.

[20]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2009-K-1511, 12/2/09.

> After reviewing the claims raised by relator in his application for post-conviction relief and motion to amend, this court finds he has not shown that he is entitled to relief. Therefore, his request for a writ of mandamus is denied.

On December 3, 2009, the Trial Court issued its own ruling on the application for post-conviction relief finding it to be untimely filed under La. Code Crim. P. art. 930.8, and alternatively commenting that the ineffective assistance of counsel claim was without merit.[21]

Doughty sought review of that ruling in the Louisiana Fourth Circuit.[22] On February 24, 2010, the Court denied the application finding it repetitive of the application addressed in the prior writ application, No. 2009-K-1511. The Court deemed the claims repetitive and also found no error in the Trial Court's judgment, citing La. Code Crim. P. art. 930.4(D).[23]

On March 20, 2010, Doughty submitted a writ application to the Louisiana Supreme Court raising three issues for review:[24] (1) the Louisiana Fourth Circuit erred in denying relief on the post-conviction claims in No. 2009-K-1511, because the application was only submitted as an exhibit to prove the need for mandamus; (2) the Trial Court erred in denying his post-conviction application as untimely under La. Code Crim. P. art. 930.8; and (3) counsel gave ineffective assistance, because he failed to interview and call Isabel Gaines (his sister) as a witness, failed to interview police about Gaines's comments to them, failed to move for speedy trial, failed to speak with the only witness in the home who died before trial, and failed to visit the scene of the crime as part of his

---

[21]St. Rec. Vol. 1 of 3, Trial Court Order, 12/3/09; Minute Entry, 12/3/09.

[22]St. Rec. Vol. 3 of 3, 4th Cir. Writ Application, 2010-K-0055, 1/13/10.

[23]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2010-K-0055, 2/24/10.

[24]The State did not produce a copy of this writ application because it was provided to the Court by Doughty. Rec. Doc. No. 1, p. 64-66.

8

investigation.²⁵ The Court denied Doughty's writ application on March 25, 2011, without stated reasons.²⁶

## II. Federal Petition

On May 31, 2011, the clerk of this Court filed Doughty's petition for federal habeas corpus relief in which he raised ineffective assistance of counsel.²⁷ On October 11, 2011, the State of Louisiana filed a response memorandum arguing that Doughty's petition was procedurally barred or otherwise without merit.²⁸ On April 4, 2012, the presiding District Court judge adopted this Court's report and recommendation, which recommended that Doughty's petition be dismissed without prejudice because it was a mixed petition, containing both exhausted and unexhausted claims.²⁹ The District Court ordered that Doughty's unexhausted claims be dismissed with prejudice and that the remaining exhausted claim be remanded to this Court for review. The District Court further ordered that Doughty had thirty (30) days from the time the order was entered, which was April 2, 2012, to file a brief in support of his exhausted claim. Doughty's brief in support was filed on May 7, 2012.³⁰

## III. Merits Review Standard

---

²⁵St. Rec. Vol. 1 of 6, La. S. Ct. Writ Application, 10-KH-1246, 6/2/10 (dated 5/24/10); St. Rec. Vol. 3 of 6, La. S. Ct. Letter, 2010-KH-1246, 6/2/10 (showing postmark of 5/26/10).

²⁶*State ex rel. Doughty v. State*, 61 So.3d 658 (La. 2011); Rec. Doc. No. 1, p. 67.

²⁷Rec. Doc. No. 1-2.

²⁸Rec. Doc. No. 11.

²⁹Rec. Doc. No. 15.

³⁰Rec. Doc. 16; Doughty's brief is post-marked May 4, 2012, two days after the District Court's thirty (30) day deadline. There is no date as to when Doughty provided the brief to prison officials, but the date could have been before May 2, 2012. Even though Doughty's brief is technically untimely, this Court will take it into account in an attempt to adequately review his claim.

9

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2)

extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *See Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See, e.g., id.* at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir. 2000), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *See also Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *See Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

## IV.   Ineffective Assistance of Counsel

Doughty claims that he is entitled to relief because his trial counsel gave ineffective assistance when he failed to investigate, interview, and subpoena a key witness, his sister Isabel Gaines, who he contends would have been essential in establishing his defense of self-defense. The State contends that his claim is without merit and should be denied.

The appropriate standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See* 466 U.S. at 697. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *See Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *See Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *see also Cantu v. Thaler*, 632 F.3d 157, 163 (5th Cir. 2011). The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (citing

*Strickland*, 466 U.S. at 689).

In order to prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "'a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S. Ct. at 791.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S.Ct. at 788. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

(citations and quotation marks omitted) *Harrington*, 131 S. Ct. at 788.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1413 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689 and quoting *Knowles*, 129 S. Ct. at 1419 n.2). Furthermore, the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689-90) *see also Matheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

Here, Doughty alleges that if counsel were to have investigated, interviewed, and subpoenaed Gaines, she would have provided testimony establishing his defense of self-defense. He claims that Gaines would have testified to two facts: (1) the presence and location of the garden hoe; and (2) the presence of grease stains around the floor of the kitchen, which she saw when she was allowed back into the apartment after the conclusion of the police investigation.[31] Doughty argues that his trial counsel provided ineffective assistance because the testimony about the garden hoe would have established self-defense by impeaching the testimony of the police officers, who testified that there

---

[31]Rec. Doc. 16.

was no garden hoe in the apartment. Doughty further argues that the testimony of the grease stains would have also furthered his defense by validating his version of the events.

In contrast, the State argues that Doughty has only made conclusory allegations without supporting affidavits from neither his trial counsel nor Gaines.[32] The State further argues that based on the evidence in the record, it is unlikely that the outcome would have been different even if Gaines had testified to the presence and location of the garden hoe and grease stains.

"'Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because the allegations of what a witness would have testified are largely speculative.'" *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). Furthermore, the "'[f]ailure to present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'" *Williams v. Cockrell*, 31 Fed. Appx. 832 (5th Cir. 2002) (quoting *Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997)).

Here, Doughty merely asserts that because his sister would have testified in a manner to establish his defense of self-defense, his trial counsel provided ineffective assistance by not investigating, interviewing, or subpoenaing her. However, Doughty has not submitted any evidence or affidavits to establish the substance of the expected testimony. *See Boyd v. Estelle*, 661 F.2d 388, 399 (5th Cir. 1981). In fact, he has presented nothing, but conclusory statements to this Court and the state courts. Furthermore, trial counsel could have concluded that calling Gaines would not have provided a sufficient basis to establish self-defense. Gaines alleged testimony would not have been

---

[32]Rec. Doc. 11.

an eye witness account but rather, it would have constituted only circumstantial evidence, which trial counsel could have concluded would be unpersuasive to the jury.

Nonetheless, even if counsel's performance was deficient, in order to demonstrate prejudice arising from failing to call witnesses, the petitioner must also identify the witness, explain the content of the witness' proposed testimony, show that the testimony would have been favorable to a particular defense, and demonstrate that the witness would have testified at trial. *See Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). There must be a "'reasonable probability' that the uncalled witness would have made [a] difference to the results." *Alexander v. McCotter*, 775 F.2d 595, 603 (5th Cir. 1985)(citation omitted).

Here, Doughty has not demonstrated that Gaines would have been either willing or available to testify at trial. Moreover, Doughty has failed to demonstrate that there was a reasonable probability that calling Gaines would have provided a different result, especially in light of her relationship with the victim. Based upon the record, the jury was already made aware of the possible presence of the garden hoe and grease stains through Doughty's written statement to police officers, cross examination of the State's witnesses, and remarks made during closing arguments.[33] The testimony sought to be offered by Gaines would have been redundant and unnecessary. *See Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984) (counsel's decision not to present cumulative testimony did not constitute ineffective assistance).

Doughty has failed to establish that his counsel's performance was deficient or prejudicial. The state courts' denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court Law. Doughty is not entitled to relief on this claim.

---

[33]St. Rec. Doc. Vol 2 of 3, Trial Transcript, 6/2/05.

## V. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Levell Doughty's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED and DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[34]

New Orleans, Louisiana, this 9th day of August, 2012.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[34]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.